IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

SONJA ROLLINS, as the Personal
Representative of the Estate of Harland Rollins,
Deceased,

         Plaintiff,

vs

THE TOWN OF HASKELL, OKLAHOMA, a
political subdivision of the State of Oklahoma,

         Defendant.

No. CIV 08-309-JHP

## OPINION AND ORDER

FACTUAL BACKGROUND

On March 18, 2007, at approximately 12:20 a.m., Officer Stephen Parsons was dispatched to 314 South Cherokee St. in Haskell, Oklahoma, to a disturbance call. Upon arriving at the residence, Officer Parsons encountered several individuals, including the plaintiff Sonja Rollins and her parents, John and Nina Welch. Harland Rollins' residence, the Welch residence and Officer Parson's residence were all in the 300 block of South Cherokee. In fact, on March 16, 2007, Officer Parsons served Harland Rollins with a protective order, which had been obtained by the Welch's due to Harland Rollin's "cussing and carrying on."[1]

Upon his arrival on March 18, 2009, Officer Parsons observed Harland Rollins in the street shouting at the plaintiff, his wife, Sonja Rollins. Initially, Mr. Rollins was uncooperative, and was not following commands. Officer Parsons told Mr. Rollins if he did not back down he would charge him with assault on an officer. Mr. Rollins then settled down and Officer Parsons placed him under arrest for disturbing the peace. Mr. Rollins was handcuffed behind his back at that time. Officer Parsons advised Mr. Rollins he was going to investigate whether Mr. Rollins had violated the protective order he had served on him two days earlier.

Thereafter, Officer Parsons and Mr. Rollins talked for a few moments inside his residence about the situation with his wife and in-laws. Mr. Rollins asked if he could put on a shirt and shoes before being transported to jail. Mr. Rollins was calm and stated he wasn't going to cause anymore trouble, or words to that effect. Officer Parsons unhandcuffed Mr. Rollins and allowed him to dress.

---

[1] In December of 2006, the plaintiff, Sonja Rollins, had filed a Protective Order against Mr. Rollins. It is disputed by Plaintiff as to whether Officer Parsons was aware of this prior Protective Order. However, it is not disputed that Plaintiff dropped the December 2006 Protective Order in January of 2007.

Before Mr. Rollins was rehandcuffed, he asked Officer Parsons to be handcuffed in front. Officer Parsons handcuffed Mr. Rollins in front, escorted Mr. Rollins to his patrol car and placed him inside. Officer Parsons then gathered witness information regarding a possible violation of the protective order.

   Officer Parsons remained about 30 to 50 feet away from his patrol car when Mr. Rollins opened the patrol car door, got out and yelled at Sonja Rollins. Officer Parsons ordered Mr. Rollins to get back in the car several times, and eventually Mr. Rollins complied. A short time later, while Officer Parsons was still interviewing Sonja Rollins, Mr. Rollins exited the patrol car and entered his home. At this time, Mr. Rollins retrieved a handgun and put the gun to his head.[2] Officer Parsons ordered Mr. Rollins to drop the gun, but Mr. Rollins did not comply. About that time, Mr. Rollins' brother appeared, and approached him in an effort to calm him down. At this time Officer Parsons was afraid Mr. Rollins might shoot him, his brother, or the other individuals present at the scene. Officer Parsons drew his gun and again ordered Mr. Rollins to drop his gun. Mr. Rollins fired one round from the revolver and shot himself in the head. The entire incident from the time Mr. Rollins came out with a gun until he shot himself lasted less than a minute. Officer Parsons was the only police officer on duty. At the time of this incident the Haskell Police Department consisted of only six officers.

Plaintiff filed her Complaint on August 19, 2008, alleging claims under 42 U.S.C. Section 1983 and the Fourth and Fourteenth Amendments to the Constitution as well as the Common Law of the State of Oklahoma. Specifically, plaintiff claims the Town of Haskell had a policy of failing

---

[2] Defendant claims Mr. Rollins retrieved the gun from his truck, but for the purpose of the motion for summary judgment, defendant does not dispute this allegation.

to train and supervise its officers and was negligent in its training, supervision, and retention of Officer Parsons and its actions resulted in the wrongful death of Harland Rollins.

Officer Parsons began working as an officer for the Town of Haskell on or about October 2006. Prior to that time, Officer Parsons had passed a background check, a physical examination, and a psychological screening. Prior to March 18, 2007, Officer Parsons had received field training and direction from Chief Thomas regarding the handling of domestic disturbance calls and proper custody and control procedures, as well as training on mentally ill citizens. Plaintiff asserts Officer Parsons did not receive adequate field training and direction from Chief Thomas.

Prior to being employed by the Town of Haskell, Officer Parsons was employed with Alaska Children's Services as a psychiatric treatment counselor. Officer Parsons had also previously worked for the Alaska Psychiatric Institute as a psychiatric nurse assistant. During Officer Parson's tenure with the Alaska Psychiatric Institute, the majority of his work experience was involved with caring for and working with individuals with severe emotional or mental diagnoses, who were either a danger to themselves or others. Prior to the date of Mr. Rollins' suicide, Officer Parsons had reviewed the Haskell Policy and Procedure Manual, including the policies on handling of family disturbance calls, handcuffing, and handling the mentally ill. Plaintiff contends both Officer Parsons' prior experience and his review of the Haskell Policy and Procedure Manual are immaterial to the summary judgment determination.

The Town of Haskell provided training to Officer Parsons to enable him to fulfill his duties as a police officer for the Town and until he could obtain his state required training from the Oklahoma Council on Law Enforcement Education and Training (CLEET). Plaintiff, however, contends such training was inadequate. The Town of Haskell had also instituted proper policies and procedures

4

regarding domestic disturbance calls, custody and control of weapons, handcuffing, and handling the mentally ill. It is undisputed that Officer Parsons was in compliance with Okla. Stat. tit 70, §3311(3) at the time of the incident, and was qualified under the statute to begin his CLEET certification training. Title 70 of the Oklahoma Statute states in relevant part:

> Every person who has not been certified as a police or peace officer and is duly appointed or elected as a police or peace officer shall hold such position on a temporary basis only, and shall, within six (6) months from the date of appointment or taking office, qualify as required in this subsection or forfeit such position.

Okla. Stat. tit. 70, §3311(3). Section 3311(2) sets forth the requirements cited by Section 3311(3), which must be met by an individual before they can become a certified police officer. The requirements cited by the statute include Okla. Stat. tit. 70, §3311(2)(a) through §3311(2)(g) and must be completed within six (6) months.

### DISCUSSION

Summary Judgment is proper where there is no genuine issue as to any material fact and where one party is entitled to judgment as a matter of law. Federal Rules of Civil Procedure 56(c) provides summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, that the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 US 244, 247-48 (1986). The moving party has the burden of demonstrating the absence of a genuine issue of fact. Celotex v. Catrett, 477 US 317, 325 (1986). If this initial burden is satisfied, the non-moving party then has the burden of coming

forward with specific facts showing there is a genuine issue for trial as to elements essential to the non-moving party's case. Matsushita Electric Industries Co. v. Zenith Radio Corporation, 475 US 574, 586-87 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment in favor of the moving party is proper." Thomas v. International Business Machines, 48 F.3d 478, 484 (10th Cir. 1995).

**I. OFFICER PARSONS DID NOT VIOLATE HARLAND ROLLINS' CONSTITUTIONAL RIGHTS. THEREFORE, DEFENDANT CANNOT BE HELD LIABLE IN A SECTION 1983 ACTION.**

It is well established precedent that a municipality may not be held liable in a Section 1983 cause of action where there was no underlying constitutional violation by any of its officers. Trigalet v. City of Tulsa, 239 F.3d 1150 (2001). The liability of a municipality is contingent on a violation of constitutional rights by the officer. Moreover, even if the training or (inadequacy of the training) was unconstitutional, the Town cannot be held liable absent a constitutional violation by an officer. Id. Thus, even if it could be said that defendant Town's policies, training and supervision were unconstitutional, the Town of Haskell cannot be held liable. In the instant case, plaintiff has failed to establish that any of Officer Parsons' actions were unlawful under the Constitution. Therefore, the claims against the defendant Town under the theories of inadequate custom or training lacks merit and summary judgment is proper.

Section 1983 provides a civil redress for violations of civil rights committed by individuals acting under the color of law. The statute provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. The statute creates no substantive civil rights, solely a procedural mechanism to enforce them. <u>Gallegos v. City and County of Denver</u>, 984 F.2d 358 (10th Cir. 1993). In order to establish liability under §1983, the plaintiff must prove that: (1) a person; (2) subjected or caused one to be subjected to the deprivation of a federal statutory or constitutional right; (3) by someone acting "under the color of law." Therefore, it is essential to prove the deprivation of a constitutional right.

The Fourteenth Amendment declares that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Supreme Court has stressed that § 1983 "must not be used to duplicate state tort law on the federal level." <u>Webber v. Mefford</u>, 43 F.3d 1340, 1343 (10th Cir. 1994). The Fourteenth Amendment is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States." <u>Id</u>. Therefore, mere negligent conduct by a government official that injures a person's life, liberty, or property does not sufficiently rise to a Fourteenth Amendment claim under § 1983. <u>Id</u>. In the instant case, Plaintiff's Fourteenth Amendment claim does not give rise to violations that are actionable under § 1983.

The Fourteenth amendment is not a "guarantee against incorrect or ill-advised [government] decisions." <u>Collins v. City of Harker Heights Tex.</u>, 503 U.S. 115, 129 (1992) quoting <u>Bishop v. Wood</u>, 426 U.S. 341 (1976). Therefore, only conduct that "shocks the

conscience" in a constitutional sense can form the basis of a substantive due process claim. County of Sacramento v. Lewis, 523 U.S. 833 (1996). "A plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. That is, the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." Uhlrig v. Harder, 64 F.3d 567, 574 (10th Cir. 1995).

Officer Parsons was the only police officer on duty at the time of this incident, therefore he was the only officer available to respond and there was no other officer to contact for back up. At the time of the incident, the Haskell Police Department only had six officers on the police force. As such, it was common practice for officers to respond to calls individually. Due to the fact that there were no other officers on duty, the actions on the part of Officer Parsons were certainly not unreasonable or did not constitute a violation of the Fourth or Fourteenth Amendments to the Constitution. Further, the initial decision to handcuff an individual and the consideration of the method to accomplish the handcuffing is discretionary, and plaintiff cannot demonstrate that handcuffing Mr. Rollins in the front of his body violated a clearly established right. Jackson v. Simmons, 2001 WL 1456859 (D.Kan); Ospina v. Department of Corrections, 769 F.Supp. 154 (1991). Discretionary functions call for judgments that are almost inevitably influenced by the decision maker's experience, values, and emotions. Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727 (1982).

In the instant case, Officer Parsons initially placed Mr. Rollins under arrest for disturbing the peace and handcuffed Mr. Rollins behind his back. Thereafter, Officer Parsons and Mr. Rollins

8

talked for a few moments about the situation with his wife and in-laws. Mr. Rollins requested to put a shirt and shoes on before being transported to jail. Mr. Rollins was calm and stated he "wasn't going to be any more trouble." After Mr. Rollins got dressed, he requested Officer Parsons to handcuff him in front because of shoulder pain. Based on several additional factors including Officer Parsons' personal relationship with Mr. Rollins, his determination Mr. Rollins was not a flight risk or a threat to nearby persons, or likely to offer additional resistance, Officer Parsons used his discretion in handcuffing Mr. Rollins in the front.

Further, Officer Parsons knew the Protective Order he had served two days earlier had no allegations of threats or violence, and no weapons were alleged to have been used by Mr. Rollins. Instead, the Welch's had sought the March 16, 2007 Protective Order due to Mr. Rollins' "cussing and carrying on." (See Ex. 3, Petition for Protective Order and Protective Order). Officer Parsons' decision was reasonable based on the facts known to him at the time of the incident. Moreover, Officer Parsons' actions were in compliance with the Policy and Procedure Manual of the Haskell Police Department. Specifically, Section 3.64: Handcuffing and Transporting Prisoners states as follows:

> <u>Circumstances will necessarily dictate the procedure</u>, but ordinarily felony prisoners should be handcuffed. If a prisoner is enough of an escape risk to handcuff, he should be handcuffed, with his hands behind his back. Handcuffs on a prisoner's wrist serve only as a club and will not appreciably affect his running. Felony prisoners should be handcuffed while being transported.

Mr. Rollins was not under arrest for a felony, nor was he a perceived escape risk. As such, Officer Parsons' actions were in compliance with the policy of the Haskell Police Department and his discretionary decision to handcuff Mr. Rollins in the front of his body was not a violation

of Mr. Rollins' constitutional rights.

The mere fact that Mr. Rollins was left unattended in the patrol vehicle is not a constitutional violation. Further, whether Officer Parsons stayed in "close proximity" to the vehicle is a subjective determination and inconsequential to the determination of whether or not Officer Parsons' actions were in violation of Mr. Rollins' constitutional rights. At all times, Officer Parsons was within sight of his patrol car and within speaking distance to Mr. Rollins as evidenced by his commands to Mr. Rollins to "stay in the patrol car." In fact, Officer Parsons was never more than 30 to 50 feet away from the patrol car, where he left Mr. Rollins in order to determine the validity of the protective order and to interview the witnesses at the scene. Officer Parsons' decision to leave Mr. Rollins secured in the patrol car while he interviewed witnesses was not unreasonable nor does such a decision reach a level of constitutional deprivation.

Finally, Officer Parsons did not cause Harland Rollins to put the gun to his head and pull the trigger resulting in his death as alleged by plaintiff. (See Complaint, Dkt. No. 2). In order to establish causation, Oklahoma Courts have held that "the proximate cause of an injury must be the efficient cause which sets in motion the chain of circumstances leading to the injury; if the negligence complained of merely furnishes a condition by which the injury was made possible and a subsequent independent, unforeseeable act caused the injury, the existence of such condition is not the proximate cause of the injury." Felty v. City of Lawton, 578 P.2d 757, 760 (Okla. 1977).

In the instant case, even if Plaintiff's allegations could establish Officer Parsons' actions

constituted negligence, negligence is not enough to establish §1983 liability. Further, merely furnishing a condition by which an injury is possible does not cause the injury. *See* Christiansen v. City of Tulsa, 332 F.3d 1270 (10th Cir. 2003)( police officers could not be liable for the due process violation under §1983 for having created predicament of suicidal individual involved in police standoff, inasmuch as individual's exposure to danger from suicide existed prior to officers' intervention). In this case, Plaintiff has not established Officer Parsons could foresee the occurrence of these events based on his prior history with Mr. Rollins, or the events which transpired on March 18, 2007. Mr. Rollins never gave any indication, prior to the retrieval of his gun that he was a threat to himself. Accordingly, Mr. Rollins' actions were completely unforeseeable by Officer Parsons.

Moreover, Officer Parsons unholstered his weapon for his own safety and the safety of other individuals present at the scene. Officer Parsons told Mr. Rollins to "drop his weapon" but Mr. Rollins refused and subsequently shot himself. Mr. Rollins' decision to take his own life was a tragic event. Yet, plaintiff cannot establish defendant Parsons' actions directly caused Mr. Rollins' death or that Officer Parsons' actions were in violation of Mr. Rollins' constitutional rights.

Although the court was unable to find any case law involving the liability for an arrestee's suicide under Section 1983, an abundance of case law exists involving liability when a prisoner/detainee commits suicide that is analogous to the present situation and worthy of discussion. In order to establish liability for a prisoner's suicide under Section 1983, plaintiff must show the official displayed deliberate indifference to the person's taking of his own life. Gish v. Thomas, 516 F.3d 952 (2008). Deliberate indifference requires the individual deliberately

disregarded a 'strong likelihood' rather than a mere possibility that the self-infliction of harm will occur. "The mere opportunity for suicide, without more, is insufficient to impose liability…." Gish, 516 F.3d 952 (2008).

Furthermore, a plaintiff must establish that the official had <u>subjective knowledge</u> of a risk of serious harm and disregarded that risk by conduct that constituted more than mere negligence. Id. The official must be subjectively aware that the combination of the prisoner's suicidal tendencies and the feasibility of suicide in the context of the prisoner's surroundings creates a strong likelihood the prisoner will commit suicide. See Cagle v. Sutherland, 334 F.3d at 984.

In Gish an officer was transporting a known suicidal detainee from the jail to the courthouse for a hearing. The detainee was handcuffed in the front and was left in the patrol car with the officer's weapon on the front seat. The officer mistakenly believed the partition between the passenger seat and the front seat was locked, and the individual obtained the gun and committed suicide. The court found that even though the officer was aware the detainee was suicidal, the officer was entitled to summary judgment because there was no evidence he was subjectively aware the security screen might have been unlocked and his actions were not deliberately indifferent to the known risk that Gish would commit suicide. Id.; *see also*, Gaston v. Ploeger, WL 4672294 (10th Cir. 2008)(court would not infer that officer's failure to notice strange behavior of inmate prior to suicide contributed to the "higher degree of fault than negligence" required for deliberate indifference).

In the instant case, Plaintiff has presented no evidence Officer Parsons was actually and subjectively aware of any risk that Mr.Rollins might inflict harm upon himself. At no time during the incident did Mr. Rollins threaten to commit suicide, or otherwise indicate that he might

commit suicide. Furthermore, Officer Parsons had no previous, conceivable knowledge Mr. Rollins might harm himself. As such, Officer Parsons' actions do not meet the deliberately indifferent standard required to establish a constitutional violation.

Officer Parsons did not use excessive force in violation of Mr. Rollins' Fourth Amendment rights. Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment. Medina v. Cram, 252 F.3d 1124, 1131 (10th Cir. 2001). (Citing Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865 (1989). The reasonableness of the officer's actions must be assessed from the officer's vantage point at the scene of the alleged violation. This inquiry must be undertaken from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396-397; See also, Saucier v. Katz, 533 U.S., 194, 121 (2001)("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation."); Olsen v. Layton Hills Mall, 312 F.3d 1304, 1314 (10th Cir. 2002), and Medina v. Cram, 252 F.3d 1124, 1131 (10th Cir. 2001).

Undeniably, the display of a weapon and the pointing of a firearm at an individual involves the threat of force. Such a show of force should be predicated on at least a perceived risk of injury, or danger to the officers or others, based upon what the officer knows at the time. If an individual fails to submit to the officer's show of force, and where an officer has reasonable cause to believe the person poses a danger to the officer or to others, the officer may continue to point his weapon at the individual. Id.

Here, Mr. Rollins had a firearm in his possession which was visible by Officer Parsons,

he refused to submit to Officer Parsons' orders to drop the weapon and maintained the gun at his head; thereby continuing to constitute a threat to himself, Officer Parsons and others at the residence. Therefore, Officer Parsons' display of force was reasonable under the circumstances and not a violation of the Fourth Amendment.

Based on the record, Plaintiff has failed to produce evidence that establishes any of Officer Parsons actions were 'conscious shocking' or sufficient to establish a violation of Harland Rollins Fourteenth Amendment rights, or that Officer Parsons used excessive force in violation of Mr.Rollins Fourth Amendment rights. Consequently, because there was no underlying constitutional violation by Officer Parsons, defendant Town cannot be held liable in Plaintiff's Section 1983 cause of action. <u>Trigalet v. City of Tulsa</u>, 239 F.3d 1150 (2001). Thus, Plaintiff's constitutional claims against the defendant Town under the theories of inadequate custom or training cannot be maintained and the Court grants summary judgment on these claims

Alternatively, summary judgment is appropriate on Plaintiff's claim for municipal liability. Plaintiff has failed to show any causal nexus between Officer Parsons' actions and any official policy or custom. The Town of Haskell is a political subdivision pursuant to the Governmental Tort Claims Act. 51 O.S. § 152(8)(c) (1991), which defines a county as a political subdivision. Thus, defendant Town falls within the definition of a municipality for the purpose of a 42 USC § 1983 analysis.

The United States Supreme Court has consistently held a municipality may not be held liable for civil rights violations under the Civil Rights Act, solely because its employees allegedly

inflict injury upon a plaintiff. Monell v. New York City Department of Social Services, 436 US 658, 694 (1978). A municipality is liable only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury the government, as an entity, is responsible under § 1983." Id, 436 US at 694.

According to Monell, a municipality may be liable for damages under § 1983, but only when an official policy or governmental custom of the municipality causes the deprivation, or violation of the constitutional rights complained of by the plaintiff. Monell, 436 US at 694. To demonstrate a municipal custom or policy under § 1983, the municipality must have: "A pattern of similar incidents in which citizens were injured or endangered by intentional or negligent policy conduct and/or serious incompetence, or misbehavior was general or widespread throughout the police force. Fraire v. City of Arlington, 957 F.2d 1268, 1278 (5th Cir. 1992) (citing to Languirand v. Hayden, 717 F.2d 220, 227 (5th Cir. 1983).

In sum, to establish municipal liability, a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged. City of Canton v. Harris, 489 U.S. 378, 385 (1989). This requirement ensures that a municipality is held liable only for those deprivations resulting from the "acts that are, properly speaking, acts 'of the municipality'--that is, acts which the municipality has officially sanctioned or ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986).

Even more, the plaintiff must establish that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Board of County Com'rs of Bryan County v. Brown, 520 U.S. at 404 (1997). This rigorous standard of culpability and causation secures a municipality will not be held liable solely for the acts of its employee. "After all, that a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the employee acted culpably." Bryan County, 520 U.S. at 406-407.

In the instant case, the defendant Town is not liable for any alleged unconstitutional act of its employee, Officer Parsons. Specifically, there is no evidence defendant Town has conduct so general or widespread as to constitute a custom of misconduct, abuse of power or denial of civil rights, which would contradict the related standards and guidelines gleaned from the Fourteenth Amendment to the United States Constitution. Furthermore, there is no pattern of similar incidents in which to impose liability upon defendant Town.

## II. PLAINTIFF HAS FAILED TO ESTABLISH A POLICY OR CUSTOM OF FAILING TO TRAIN OR SUPERVISE ITS OFFICERS

Additionally, plaintiff has failed to provide any evidence regarding allegations of failure to

train, educate, discipline or monitor its officers with regard to domestic disturbance calls, dealing with emotionally unstable citizens, proper custody and control or protection of suspects in police custody. Likewise, plaintiff's claim that defendant Town failed to discourage further constitutional violations on the part of its police officers is unfounded. Therefore, plaintiff's 42 U.S.C § 1983 claim against defendant Town fails as a matter of law.

Here, plaintiff has alleged a failure to act on the part of defendant Town, by claiming defendant Town did not provide appropriate in-service or field training in regard to domestic disturbance calls. Under the law, if a plaintiff has alleged a failure to act, he or she must demonstrate the municipality's inaction resulted from 'deliberate indifference' to the rights of the plaintiff. City of Canton v. Harris, 489 U.S. at 389 (1989). Further, if the inaction alleged rests on the failure to train, the plaintiff must prove "the need for more or different training is so obvious, and the inadequacy, so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need". City of Canton, 489 U.S. at 390. The deficiency identified in a municipality's training program must "be so closely related to the ultimate injury that the deficiency in training actually caused the police officers misconduct." City of Canton, 489 U.S. at 379.

The Court in Bryan County, noted 'deliberate indifference' is a severe standard which demands proof that a municipal actor "disregarded a known or obvious consequence of his actions," and that "[a] showing of simple or even heightened negligence will not suffice." 520 U.S. 397. In

this case, there is nothing in the record to suggest the defendant Town had knowledge of a serious risk of individuals exiting a patrol car, retrieving an unknown weapon, and committing suicide while handcuffed in the front, or placed in the patrol car. Moreover, evidence is lacking to support the claim defendant Town had a municipal custom failing to adequately train and educate its officers regarding domestic disturbance calls. Prior to March 18, 2007, Officer Parsons had received field training and direction from Chief Thomas regarding the handling of domestic disturbance calls and proper custody and control procedures, as well as training concerning mentally ill citizens. Additionally, Officer Parsons had access to all departmental policies, which included sections on custody and control, handling the mentally ill, and family dispute calls. (See Policy and Procedure Sections, Ex. 6).

Further, at the time of this incident on March 18, 2007, Officer Parsons was still within the first six months of his employment with the Town of Haskell and in accordance with Okla. Stat. tit. 70, §3311. Officer Parsons hire date was October 10, 2006. The date of the incident was March 18, 2007, approximately five (5) months after Officer Parsons was hired. As such, Officer Parsons was not in violation of the statute and was not required to be a "certified" police officer as alleged by plaintiff. It is also important to note Officer Parsons began the qualification process in September 2006, a month before his formal hire date and six months prior to the incident. He had completed several CLEET requirements including the psychological exam and background checks. At the time of the incident, the only requirement Officer Parsons had not completed was his basic academy training.

## III. PLAINTIFF HAS FAILED TO SUPPORT A STATE BASED CLAIM FOR NEGLIGENT SUPERVISION, RETENTION AND TRAINING

A claim against an employer for negligent retention, or supervision is based on an employee's harm to a third party through employment. An employer may be found liable for negligent hiring, retention, or supervision, only if at the critical time of the tortious incident, the employer had reason to believe the employee would create an undue risk of harm to others. N.H v. Presbyterian Church, 998 P.2d 592, 1999 OK 88. In sum, in order to survive summary judgment on a claim for negligent supervision and retention, plaintiff must show a genuine issue of material fact exists as to whether: (1) Officer Parsons engaged in a wrongful act that injured Mr. Rollins; and (2) that defendant Town was negligent in supervising or retaining Officer Parsons. Plaintiff has failed to meet either of these requirements.

First, based on the record, Officer Parsons did not engage in any illegal or wrongful act that injured Mr. Rollins. Additionally, plaintiff has not established Officer Parsons' actions directly resulted in the wrongful death of Mr. Rollins. Mr. Rollins suicide was a tragic event which was the result of his own actions, not that of Officer Parsons. Likewise, the record reveals no evidence which indicates defendant Town had reason to believe Officer Parsons would create an undue risk of harm to Mr. Rollins, or any other citizen, as required to establish a claim for negligent supervision or retention. Nothing was present in Officer Parsons pre-employment or employment history which would be indicative of an inability to adequately engage in his duties as a police officer.

Moreover, defendant Town took adequate and reasonable steps to properly train Officer

19

Parsons. During the time Officer Parsons was employed prior to the shooting he received field training from Chief Thomas and he had access to all departmental policies. Further, at the time of the event on March 18, 2007, Officer Parsons was still within the first six months of his employment with the town of Haskell and in accordance with Okla. Stat. tit. 70, § 3311. Officer Parsons was neither in violation of the statute, nor had he failed to be properly certified.

Accordingly, Defendant's Motion for Summary Judgment is granted.

**IT IS SO ORDERED this 28th day of October, 2009.**

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma